William Cramer (Token), Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

James E. Rhoades (Token), Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 12, 1985, before Judges MacPHAIL and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Frank J. Lucchino, Grogan, Graffam, McGinley, Solomon & Lucchino*, for petitioners.

. *Charles G. Hasson*, Acting Deputy Chief Counsel, with him, *Joel G. Cavicchia*, Associate Counsel, for respondent.

OPINION BY JUDGE BARRY, November 4, 1985:

These cases involve the effect of amendments to the Trade Act of 1974 (Trade Act), Act of January 3, 1975, Pub. L. No. 93-618, 19 U.S.C. §§2101-2487, contained in the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, 95 Stat. 881 (1981). Specifically, we must deal with amendments to that portion of the Trade Act which provides assistance to United States workers whose jobs are affected by the importing of products.

Both William Cramer and James E. Rhoades, token claimants who are representing a number of other similarly situated workers, were employed by Bethlehem Steel Company in Johnstown. Since 1977, they had been laid off from work for intermittent periods during which they collected both regular unemployment compensation benefits and trade readjustment allowance (TRA) benefits which were provided for in the Trade Act. The amendments to the Trade Act became effective before claimants had collected all of the TRA benefits to which they were allegedly en-

titled under the original Trade Act. Because of the 1981 amendments, the Office of Employment Security (OES) denied the claimants' applications for their remaining TRA benefits. A referee, on December 17, 1981, affirmed an OES determination and denied the claimants' requests for TRA benefits. The Unemployment Compensation Board of Review (Board) affirmed the referee and these appeals followed.

In order to fully understand the problem involved in this case, a historical review of the Trade Act, both prior and subsequent to the 1981 amendments is necessary. Section 2 of the Trade Act provides:

The purposes of this Chapter are, through trade agreements affording mutual benefits—

(1) to foster the economic growth of and full employment in the United States and to strengthen economic relations between the United States and foreign countries through open and nondiscriminatory world trade;

(2) to harmonize, reduce, and eliminate barriers of trade on a basis which assures substantially equivalent competitive opportunities for the commerce of the United States;

(3) to establish fairness and equity in international trading relations, including reform of the General Agreement on Tariffs and Trade;

(4) *to provide adequate procedures to safeguard American industry and labor against unfair and injurious import competition, and to assist industries, firms, workers, and communities to adjust to changes in international trade flows;*

(5) to open up market opportunities for United States commerce in nonmarket economies; and

(6)  to provide fair and reasonable access to products of less developed countries in the United States market. (Emphasis added.)

19 U.S.C. §2102.

The procedures for protecting workers from injuries due to imports begin in Section 221 of the Trade Act, 19 U.S.C. §2271, which allows workers to petition the Secretary of Labor for TRA benefits. Section 222 of the Trade Act provided:

> The Secretary shall certify a group of workers as eligible to apply for adjustment assistance under this chapter if he determines—
>
> (1)  that a significant number or proportion of workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated,
>
> (2)  that sales or production, or both, of such firm or subdivision have decreased absolutely, and
>
> (3)  that increases of imports of articles like or directly competitive with articles produced by such workers' firm or appropriate subdivision thereof *contributed importantly* to [were a substantial cause of] such total or partial separation, or threat thereof, and *to* [of] such decline in sales or production.
>
> For purposes of paragraph (3), the term *'contributed importantly'* ['substantial cause'] means a cause which is important *but not necessarily more important than any other cause* [and not less than any other cause].

19 U.S.C. §2272.[1]

---

[1] The italicized portions of the quote were deleted by the 1981 amendments and replaced by the bracketed portions.

In the present case, the claimants' union at the Johnstown plant requested assistance for its members in October of 1977. On February 13, 1978, the Office of the Secretary of the Department of Labor certified that the workers at the plant were entitled to TRA benefits because imports "contributed importantly" to the workers' total or partial separation from work. Accordingly, the certification stated, "All workers at the Johnstown, Pennsylvania plant of Bethlehem Steel Corporation who became totally or partially separated from employment on or after *October 1, 1976* are eligible to apply for [TRA benefits] under Title II, Chapter 2 of the Trade Act of 1974." (Page 7, Feb. 13, 1978 Certification of Department of Labor.)

The certification date is especially important. Section 231 of the Trade Act, dealing with qualifying requirements of workers provides, *inter alia:*

(a) Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification under Subpart A who files an application for such allowance for any week of unemployment which begins [more than 60 days] after the date *specified in such certification pursuant to Section 2273(a) of this title [on which the petition that resulted in such certifications was filed under section 2211]*, if the following conditions are met:

(1) Such worker's total or partial separation before his application under this part occurred—

. . .

(B) before the expiration of the 2-year period beginning on the date on which the determination under section 2273 of this title was made . . .

. . .

[(3)   Such worker—

. . .

(B)   has exhausted all rights to any unemployment insurance to which he was entitled (or would be entitled if he applied therefor . . .)]
19 U.S.C. §2291.[2]

Prior to the 1981 amendments, Section 233 of the Trade Act provided:

(a)   Payment of trade readjustment allowances shall not be made to any adversely affected worker for more than 52 weeks. . . .

(b)(1)[A]   trade readjustment allowance may not be paid for a week of unemployment beginning more than 2 years after the beginning of the appropriate week.

. . .

(4)   For purposes of this subsection, the appropriate week—

(A)   for a totally separated worker is the week of his most recent total separation, and

(B)   for a partially separated worker is the first week for which he receives a trade readjustment allowance following his most recent partial separation.

The 1981 amendments, which all parties believe to be the sole controlling factor in this case, radically altered Section 233 which at present provides in pertinent part:

(a)   **Maximum allowance; deduction for unemployment insurance.** . . .

. . .

(2)   A trade readjustment allowance shall not be paid for any week after the 52 week period beginning with the first week following the first week in the period covered by the certification

---

[2] See footnote 1.

with respect to which the worker has exhausted (as determined for purposes of section 2291(a) (3)(B) of this title) all rights to that part of his unemployment insurance that is regular compensation.

19 U.S.C. §2293.

The Board affirmed the referee's findings of the fact, the pertinent ones of which provide:

1. The claimant was last employed . . . with Bethlehem Steel Corp. His last day of work, for purposes of this claim, was August 28, 1981 at which time he was laid off due to lack of work.

. . .

3. The claimant has a current application for regular unemployment compensation benefits on record with an effective date of December 28, 1980.

4. The claimant, while working for the same employer . . . had a previous separation on January 29, 1977 due to the lack of work.

5. The claimant filed an application for Trade Readjustment benefits with an effective date of January 23, 1977 and also filed an application for regular unemployment compensation benefits with an effective date of January 30, 1977.

6. The claimant signed for twelve weeks of regular unemployment compensation and Trade Readjustment benefits through the week ending January 21, 1978. Under the application for regular unemployment compensation benefits effective January 30, 1977, the claimant was entitled to receive $133 weekly for thirty weeks.

7. The claimant, for purposes of this claim, exhausted his claim for regular unemployment

compensation benefits when his benefit year ended, under his application dated January 30, 1977, on January 28, 1978.

(8) The claimant under his application for Trade Readjustment benefits dated January 23, 1977 *filed his 48th week with the week ending October 10, 1981.*

(9) The claimant under his current application for regular unemployment compensation benefits effective December 28, 1980 has a remaining unemployment compensation entitlement and can continue to claim benefits through December 26, 1981 if he is unemployed and meets the qualifications of the unemployment compensation law.

(10) The claimant's *52 week Trade Readjustment Allowance Entitlement* benefit period, for purposes of this claim, begins on *January 28, 1978* and ends on *January 27, 1979.* (Emphasis in original.)

Referee's decision of December 17, 1981.[3]

The referee then went on to explain his reasoning for denying benefits:

Claimant's Readjustment claim was established with his unemployment insurance claim with an application for benefits dated January 30, 1977. Claimant signed for twelve (12) weeks of benefits through the week ending January 21, 1978; however, he was entitled under this application to a weekly benefit rate of $133 for thirty weeks or $3990. Under the amendment

---

[3] These findings were made to the claim of Rhoades. Although the facts in Cramer are slightly different with regard to dates, those differences have no significance for the purposes of this appeal.

claimant exhausted his unemployment insurance benefits when his benefit year ended on January 28, 1978. The fifty-two week Trade Readjustment Allowance Entitlement benefit period began on January 28, 1978 and ended on January 27, 1979. Therefore, claimant's request for Trade Readjustment benefits for the compensable week ending October 10, 1981 and the weeks thereafter must be denied under the provisions of Section 233(A)(2) as last amended since the Trade Readjustment Allowance Entitlement benefit period ended January 27, 1979.

Claimant also is not eligible for Trade Readjustment benefits under the provisions of Section 2291(a)(3)(B) of the Trade Readjustment Act of 1974 as last amended because under his current application for regular unemployment insurance dated December 28, 1980, he had continuing benefits and has *not exhausted his entitlement under this application.* (Emphasis in original.)

(Referee's decision dated December 17, 1981.) We can find no fault with the referee's interpretation of the 1981 amendments of the Omnibus Reconciliation Act of 1981. Claimants argue, however, that the amendments should not be literally applied to their cases.

Section 2514 of the Omnibus Reconciliation Act provides:

(b) An adversely affected worker who is receiving or is entitled to receive payments of trade readjustment allowances under chapter 2 of the Trade Act of 1974 for weeks of unemployment beginning before October 1, 1981, shall be entitled to receive—

(1)   with respect to weeks of unemployment beginning before October 1, 1981, payments of trade readjustment allowances determined under such chapter 2 without regard to the amendments made by this subtitle; and

(2)   with respect to weeks of unemployment beginning after September 30, 1981, payments of trade readjustment allowances as determined under such chapter 2 as amended by this subtitle, except that the maximum amount of trade readjustment allowances payable to such an individual for such weeks of unemployment shall be an amount equal to the product of the trade readjustment allowance payable to the individual for a week of total unemployment (as determined under section 232(a) as so amended) multiplied by a factor determined by subtracting from fifty-two the sum of—

(A)   the number of weeks preceding the first week which begins after September 30, 1981, and which are within the period covered by the same certification under such chapter 2 as such week of unemployment, for which the individual was entitled to a trade readjustment allowance or unemployment insurance, or would have been entitled to such allowance or unemployment insurance if he had applied therefor, and

(B)   the number of weeks preceding such first week that are deductible under section 232(d) (as in effect before the amendments made by section 2504);

except that the amount of trade readjustment allowances payable to an adversely affected worker under this paragraph shall be subject to adjustment on a week-to-week basis as may be required by section 232(b).

We think it particularly instructive that the legislative history to section 2514 of the Omnibus Reconciliation Act of 1981 specifically provides: "The section also provides transitional provisions to ensure that workers receiving TRA payments are not disqualified from receiving further payments to which they would otherwise be entitled by reason of the application of the changes made by the bill after September 30, 1981." Legislative History of the Omnibus Reconciliation Act of 1981, 1981 U.S. Code of Cong. and Adm. News 804.

Despite the existence of the transitional provisions of Section 2514 of the Omnibus Reconciliation Act of 1981, neither the referee nor the Board dealt with these provisions in deciding claimant's case. We find it incredible that these provisions were ignored in deciding these cases. Suffice it to say that the factual findings made in the present case are woefully inadequate to permit appellate review and a remand is therefore necessary.

One further point must be made. In their brief, the claimants argue that under the unamended Trade Act of 1974, there were no restrictions on the length of time in which an individual could collect his fifty-two weeks of TRA benefits. However, both Section 231(a)(1)(B) and Section 233(b)(1) seems to place time limits on the period in which an individual could collect his TRA benefits. Should it be determined on remand that the transitional provisions of Section 2514 of the Omnibus Reconciliation Act of 1981 permit these claimants to collect their remaining weeks of TRA benefits, this Court deems it necessary that these sections be discussed with appropriate factual findings.

## ORDER

Now, November 4, 1985, the orders of the Unemployment Compensation Board of Review, dated April 13, 1982, at Nos. B-204420 and B-204419 are vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

